1  LEE TRAN & LIANG APLC
   James M. Lee (Bar No. 192301)
2  Enoch H. Liang (Bar No. 212324)
   601 S. Figueroa Street, Suite 4025
3  Los Angeles, CA 90017
   Tel: (213) 612-3737
4  Fax: (213) 612-3773
   Email: jml@ltlcounsel.com, ehl@ltlcounsel.com
5

6  Attorneys for Plaintiff
   Actuate Corporation                    E-filing
7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13

14                                    **CV 10 2798**  **JL**

   ACTUATE CORPORATION, a          )  CASE NO.:
15 California corporation,          )
                                    )  COMPLAINT FOR:
16            Plaintiff,            )
                                    )  1. COPYRIGHT INFRINGEMENT
17                                  )  2. BREACH OF CONTRACT
        v.                         )
18                                  )
19 LEAR CORPORATION; and DOES 1    )
   through 10,                      )
20                                  )  DEMAND FOR A JURY TRIAL
              Defendants.           )
21                                  )

22

23

24

25

26

27

28

   _____

                                              COMPLAINT

1    Plaintiff Actuate Corporation complains of Defendants and alleges as

2  follows:

3                          **JURISDICTION AND VENUE**

4

5          1.     This action arises under the copyright laws of the United States, Title

6  17, *United States Code* and for a related breach of contract action.  The jurisdiction

7  of this Court is founded upon 28 U.S.C. § 1331, 17 U.S.C. § 502, and 28 U.S.C. §

8  1367.

9          2.     Venue is proper in the Northern District of California pursuant to 28

10  U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the

11  claim and the actual harm to Plaintiff occurred in this District by reason of the

12  Defendants' conduct as alleged below.  Venue is proper in any judicial district in

13  which any defendant would be amenable to personal jurisdiction.  Defendants are

14  subject to the personal jurisdiction in this District as a result of the following: (i) a

15  venue provision in the contract at issue in this matter; (ii) Defendants' intentional

16  and willful continued infringement of the copyrighted material owned by Plaintiff;

17  (iii) Defendants' knowledge that Plaintiff resided in and had its principal place of

18  business in this District; (iv) Defendants' knowledge that the injury would be

19  likely to be suffered in this District; (v) California law applies to the breach of

20  contract claim between the parties; and (vi) Defendants' otherwise making

21  available the infringing materials for distribution in the Internet within this District.

22

23                                **PARTIES**

24

25          3.     Actuate is a corporation incorporated in the state of Delaware with its

26  headquarters at 2207 Bridgepointe Parkway, Suite 500, San Mateo, California.

27

28

-2-

COMPLAINT

1    4.    Actuate is informed and believes, and on that basis alleges, that

2    defendant Lear Corporation is a Delaware corporation with its headquarters at

3    21557 Telegraph Road, Southfield, Michigan.

4    5.    The identities of the fictitiously named defendants are not currently

5    known, and this complaint will be amended to include the names of such

6    individuals or entities, when the same is known.

7    6.    Plaintiff is informed and believes, and on that basis alleges, that at all

8    relevant times mentioned in this complaint, Defendants, and each of them, were

9    acting in concert and active participation with each other in committing the

10   wrongful acts alleged herein, and were the agents of each other and were acting

11   within the scope and authority of that agency and with the knowledge, consent and

12   approval of each other.

13   7.    Plaintiff has no plain, speedy, or adequate remedy at law, and stands

14   to suffer irreparable harm.  For that reason, Plaintiff seeks injunctive relief.

15

16                   **FACTS GIVING RISE TO THIS ACTION**

17

18   5.    Actuate develops computer software and sells licenses to that

19   software, almost exclusively to large businesses.

20   6.    Actuate holds all right, title, and interest in federally-registered

21   United States copyrights covering its Actuate 10.0 software and earlier versions

22   thereof, including the following copyrights: TX0006348889; TX0006348888;

23   TX0006348887; TX0006348886; TX0006348885; TX0006348884;

24   TX0006348883; TX0006348882; TX0006348881; TX0006348880;

25   TX0006348879; TX0006348878; TX0006348877; TX0006348876;

26   TX0006348875; TX0006348874; TX0006348873; TX0006348872;

27   TX0006348871; TX0006348870; TX0006862866; TX0006862880;

28

-3-

1  TX0006862885; TX0006863869; TX0007098707; and TX0007097438
2  (collectively, the "Copyrighted Work").

3      7.     Beginning November 30, 2001, Defendant licensed a total of four (4)
4  server based programs of Actuate software.

5      8.     As part of Defendant's use of the Actuate software, it agreed to a
6  click through End User License Agreement ("License Agreement"). The License
7  Agreement required that every central processing unit ("CPU") on the server
8  where Actuate server program is installed must be licensed. The License
9  Agreement was subsequently amended but in each subsequent version, Actuate
10 maintained that every CPU on the server where Actuate server program is
11 installed must be licensed. Attached as Exhibit "A" is a true and correct copy of
12 the License Agreement of Version 8 and Exhibit "B" is a true and correct copy of
13 the License Agreement of Version 8 Service Pack 1, the terms of which are
14 incorporated as though fully set forth herein and are applicable to the facts below.

15     9.     On July 22, 2008, Defendant claimed and certified in writing that it
16 had ceased using two of the CPU licenses for Actuate Version 8 software
17 originally issued on November 16, 2005. This followed a July 7, 2008 request for
18 a Version 9 upgrade for 2 CPUs which followed Defendant's earlier receipt of a
19 Version 9 upgrade for another 2 CPUs in August 2007.

20     10.    By August 2008, 4 CPUs of this version 9 software was installed by
21 the Defendant on two server machines for which the Actuate 'node locking'
22 process was completed by the Defendant. This total of (4) CPUs of upgraded
23 software from Version 8 to Version 9 was consistent with the permitted number
24 of 4 CPU server software licenses that Defendant previously acquired from
25 Actuate and was licensed to operate contemporaneously.

26     11.    On January 29, 2009, Defendant contacted Actuate to request a
27 further 2 CPUs of Version 9 software upgrade from a Version 8 license that it had
28

-4-

1  been using. Defendant stated that it was using license key number 23254 on

2  server machine "Actuateprod2" and sent a copy of this license key as part of this

3  request. Actuate did not fulfill this request since it exceeded Lear's available

4  software license inventory.

5      12.    On June 25, 2009, Defendant contacted Actuate to request a 2 CPU

6  Version 10 upgrade from a Version 8 license that it had been using. Defendant

7  stated that it was using license key number 23255 on server machine

8  Actuateprod2 and sent a license file and a server log to Actuate which contained

9  this key number. Actuate did not fulfill this request since it exceeded Lear's

10  available software license inventory.

11      13.    However, upon investigation, Actuate had no record of ever issuing

12  license key number 23255 to Defendant, or to anyone else. Actuate then

13  conducted an internal investigation, which revealed that Defendant manipulated,

14  modified, and concealed some of the programming of the software to install two

15  (2) additional unlicensed CPUs of Version 8 programs, as well as its related

16  modules, onto Defendant's servers for use in its business.

17      14.    To make matters worse, when Actuate attempted to investigate the

18  matter, Defendant continually changed its story about how it was in possession of

19  and using license key number 23255 and went on to manipulate past email

20  correspondence in attempt to further conceal its wrongful acts.

21

22                    **FIRST CLAIM FOR RELIEF**

23                    **(COPYRIGHT INFRINGEMENT)**

24                       **Against All Defendants**

25

26      15.    Actuate repeats and realleges and incorporates by reference the

27  allegations in paragraphs 1 through 14 above as though fully set forth herein.

28

-5-

1    16.    Defendant has reproduced, displayed, and distributed unauthorized
2  copies from Actuate's Copyrighted Work. Such unauthorized copies and use
3  exceed the permissible license terms and therefore constitute unlawful
4  reproductions of Actuate's Copyrighted Work.

5    17.    Defendant's acts violate the exclusive rights of Plaintiff as the
6  copyright holder to reproduce, display and distribute the Copyrighted Work and
7  to create derivative works from it, as set forth in 17 U.S.C. § 106. Defendant's
8  use of these Copyrighted Work is and has been made without Actuate's consent.

9    18.    Defendant's actions described above have caused and will continue
10  to cause irreparable damage to Actuate, for which Actuate has no remedy at law.
11  Unless Defendant is restrained by this Court from continuing their infringement
12  of the Copyrighted Work in violation of 17 U.S.C. § 106, these injuries will
13  continue to occur in the future.

14

15                     **SECOND CLAIM FOR RELIEF**
16                       **(BREACH OF CONTRACT)**
17                        **Against All Defendants**

18

19    19.    Actuate realleges and incorporates by reference paragraphs 1 though
20  18 above as though fully set forth herein.

21    20.    The License Agreement constitutes writings to which Defendant was
22  a party and through which Actuate provided Defendant with a limited license to
23  use the Licensed Software.

24    21.    Actuate fulfilled all of its obligations under the License Agreement
25  that were not excused by Defendant's actions.

26    22.    One of the limitations contained in the License Agreement is that
27  Defendant could only install the Actuate software on a single CPU.

28

-6-

COMPLAINT

1      23.    Actuate is informed and believes that Defendant breached the

2 License Agreement by exceeding the permissible number of CPUs by two – from

3 4 of the originally licensed to 6 total CPUs.

4      24.    Actuate has been harmed by Defendant's ongoing breach of the

5 License Agreement and is entitled to both injunctive relief and monetary damages

6 in an amount to be determined at trial, but in excess of the jurisdictional

7 requirements of this Court.

8

9                     **PRAYER FOR RELIEF**

10

11      Wherefore, Plaintiff prays for judgment in its favor against each of

12 Defendants as follows:

13      1.    An injunction barring Defendant from continuing to possess or use the

14 Actuate Software and enter preliminary and permanent injunctions requiring

15 Defendants, and all those acting in concert or participation with them, from

16 infringing or encouraging, aiding or abetting others to infringe the Copyrighted

17 Work;

18      2.    Actual damages plus disgorgement of Defendant's profits resulting

19 from its infringement;

20      3.    Costs of suit and attorneys' fees, pursuant to 17 U.S.C. § 505;

21

22      4.    And that Plaintiff be granted such other and further relief as the

23 equities of the case may require and as this Court may deem just and proper under

24 the circumstances.

25

26

27

28

-7-

1  DATED: June 25, 2010

2                                    LEE TRAN & LIANG APLC

3

4                                    By_____

5                                       James M. Lee
                                         Attorneys for Plaintiff
6                                        Actuate Corporation

7                          **DEMAND FOR JURY TRIAL**

8

9          Plaintiff hereby demands a jury trial.

10  DATED: June 25, 2010

11                                   LEE TRAN & LIANG APLC

12

13                                   By_____

14                                      James M. Lee
                                         Attorneys for Plaintiff
15                                       Actuate Corporation

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-

COMPLAINT

# EXHIBIT  A

# Software License Agreement For Actuate® Software

**ATTENTION: PLEASE READ THIS AGREEMENT CAREFULLY BEFORE YOU INSTALL, COPY, DOWNLOAD OR USE THE SOFTWARE ACCOMPANYING THIS PACKAGE.**

This Software License Agreement "SLA" is a legal agreement between "You" (the individual or entity) who acquired the Actuate software products and printed and/or electronic documentation and software license key(s) accompanying this SLA "Software," and Actuate Corporation and its subsidiaries, "Actuate." By installing, copying, downloading or using the Software, You agree to be bound by the terms of this SLA. If You do not agree with the terms of this SLA, Actuate is unwilling to license the Software to You. In such event, You may not install, copy, download or use the Software and You must return to Actuate the complete Software package, including the disks and printed materials or if you downloaded the Software notify Actuate in writing that You have de-installed the Software, within thirty (30) days of receipt for a full refund, otherwise You will be obligated to pay Actuate the purchase price of the Software.

## 1. LICENSE.

1.01    **Grant.** Subject to the terms and conditions of this SLA, Actuate hereby grants to You a non-exclusive, non-transferable license to use the Software for internal business purposes and only on the authorized number of CPUs and/or only by the authorized number of Named Users and only for the authorized use for which You have paid Actuate a license fee. You may not install the Software outside of the country to which the Software was initially shipped. Once installed, You must notify Actuate in writing if You move any server Software products from any CPU or server to another CPU or server. Such notice shall include (i) the CPU identification and server name of all CPUs and servers involved in such a move and (ii) any other information reasonably requested by Actuate. Actuate may withhold Software license key(s) if, in Actuate's reasonable opinion, You are using the Software in an unauthorized manner.

1.02    **Term.** The license granted hereby begins upon installation, copying, downloading or use of the Software and continues in perpetuity unless sooner terminated.

1.03    **No Copies.** Except as expressly allowed by the terms of this license, You shall not copy or modify any portion of the Software other than that You may make one (1) copy of the computer program portion of the Software solely for archival purposes.

1.04    **Other Limitations.** You shall not rent, lease, loan, sell or otherwise distribute the Software or use the Software as an application service provider, as a service bureau, or in a fee-generating service provided to third parties. You shall not reverse engineer, decompile or otherwise attempt to derive the source code for the Software.

1.05    **Limited Use License.** If You acquired the Software from a Third Party and the Software was embedded or bundled with a "Third-Party Software Application," You are only granted a "Limited Use" license for the Software. See Section 8 of this SLA for an explanation of Limited Use rights.

1.06    **CPU License.** With respect to any Software licensed by You, which is designated as "CPU License" Software, You agree to configure the Actuate application(s) so that such application(s) can only access the number of CPUs that are licensed. You further agree that every CPU on the reporting server environment, including, but not limited to, remote clustered nodes that are configured to run Actuate server products must be licensed.

1.07    **Named User License.** With respect to any Software licensed by You, which is designated as "Named User License" Software and thereby limited to a specified number of named individual users, the following shall apply, and You agree to use such Software only in accordance with the following restrictions:

A Named User is an individual person who receives any content generated by the Actuate iServer. The individual may be authorized to access the iServer to view reports and/or information content that is managed by the iServer, they may receive content via email, or they may receive printed content generated by the iServer. A Named User license allows only a specific number of Named Users to access the iServer or view reports/information content generated by the iServer. No other users are licensed to access the server or view reports/information content generated by the server at any time. Each Named User License block comprises a specified number of named user licenses and is available in block increments only. Named User licensing is charged on a *per user, per iServer System*



(an iServer System is a stand-alone or clustered iServer). Thus, each individual person must have a separate Named User license for each iServer being accessed or from which any content is received. If You are using Actuate Multi-Application Option or Online Archive Option, a separate Named User license is required for each additional Encyclopedia Volume (i.e., application) that an individual person accesses or receives content from within an iServer System.

1.08 **Named Developer License.** With respect to any Software licensed by You, which is designated as "Named Developer License" Software, the following shall apply and You agree to use such Software only in accordance with the following restrictions:

Named Developer License Software is charged on a *per developer* basis, and thus each license may be accessed or used for development purposes by only a single, identified developer. Such developer may use an individual iServer for development or access a common development iServer; provided, however, that each individual developer accessing an iServer must have a separate Named Developer License.

## 2. CONFIDENTIALITY; OWNERSHIP.

2.01 **Title.** Title to the Software is reserved to Actuate. You acknowledge and agree that Actuate is and will remain the owner of the Software.

2.02 **Proprietary Information.** You agree that the Software and all computer code, inventions, algorithms, know-how and ideas embodied in or by the Software and all other business, technical and financial information You obtain from Actuate, whether designated confidential or not (hereinafter referred to as "Proprietary Information") are the confidential property of Actuate. You also agree that any expression of Actuate's findings, analyses, conclusions, opinions, recommendations, ideas, techniques, know-how, designs, programs, enhancements, software, and other technical information provided to You by Actuate in the course of performing consulting, training, maintenance or other services related to the Software are the Proprietary Information of Actuate and are licensed to You, without further license fees, pursuant to this SLA.

2.03 **Non-Disclosure.** You agree to keep the Proprietary Information in a secure place, under access and use restrictions designed to prevent disclosure of the Proprietary Information to unauthorized persons and to instruct Your personnel to keep the Proprietary Information confidential.

2.04 **Breach.** You agree that any disclosure of the Proprietary Information to a Third Party other than in accordance with the terms of this SLA constitutes a material breach of this SLA and will terminate the license granted by this SLA.

2.05 **Injunctive Relief.** You further agree that You will be liable for all damages to Actuate that result from any wrongful disclosure of the Proprietary Information to any Third Party or any breach of this SLA. You acknowledge that such wrongful disclosure or breach could cause irreparable injury that cannot be compensated by monetary damages and that injunctive or other equitable relief may be appropriate.

## 3. MAINTENANCE AND SUPPORT.

Only Actuate or an Actuate authorized distributor is authorized to perform maintenance and support of the Software, and such service will be performed solely in accordance with a written agreement or purchase order therefore. Actuate or its authorized distributor shall have no obligation to provide support or maintenance or updates, modifications or new releases, except as may be set forth in that agreement or purchase order. No maintenance or support obligation of Actuate or its authorized distributor shall survive termination of this SLA.

## 4. WARRANTIES AND LIMITATIONS OF LIABILITY.

4.01 **Software Media Warranty.** Actuate warrants that the medium on which the Software is delivered will be free from defects in workmanship and materials under normal use for a period of ninety (90) days after delivery of the Software, and that the medium will be repaired or replaced, at Actuate's option, upon return of said defective medium to Actuate within said ninety (90) day period.

4.02 **Software Warranty.** Actuate warrants that for a period of ninety (90) days from the initial delivery of the Software, the Software, if properly used by You in accordance with the Documentation, shall operate in material conformity with the Documentation for such Software. Actuate does not warrant that the Software will meet all of Your requirements or that the use of Software will be uninterrupted or error free. Actuate's entire liability, and Your exclusive remedy, under this limited Software Warranty shall be for Actuate (i) to attempt, through reasonable

2

efforts, to correct any reproducible material nonconformity discovered within the 90-day warranty period, or (ii) to replace the nonconforming Software. In the event Actuate is unable to cure the breach of warranty described in this Section 4.02 after attempting the remedies described in (i) and (ii) above, You may return the Software and Actuate shall refund any fees paid by You for the Software. The above remedies are available only if Actuate is promptly notified in writing, within the warranty period, upon discovery of the nonconformity by You and if Actuate's examination of the Software discloses that such nonconformity exists and that the Software has not been (i) altered or modified, (ii) subjected to negligence, or computer or electrical malfunction, or (iii) used, adjusted, or installed other than in accordance with the instructions set forth in the Documentation.

4.03    **Disclaimer.** THE EXPRESS WARRANTIES SET FORTH IN SECTIONS 4.01 AND 4.02 ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY WITH RESPECT TO THE SOFTWARE, AND ACTUATE EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF NONINFRINGEMENT OF THIRD PARTY RIGHTS, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

4.04    **Limitation of Liability.** YOU AGREE THAT YOUR EXCLUSIVE REMEDIES, AND ACTUATE'S ENTIRE LIABILITY WITH RESPECT TO THE SOFTWARE OR SERVICES PERFORMED BY ACTUATE THAT RELATE TO THE SOFTWARE, SHALL BE AS SET FORTH HEREIN. YOU FURTHER AGREE THAT ACTUATE WILL NOT BE LIABLE TO YOU FOR ANY DAMAGES, WHETHER SPECIAL, INDIRECT OR CONSEQUENTIAL, INCLUDING, WITHOUT LIMITATION, LOST PROFITS, LOSS OF DATA, OR PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES ARISING OUT OF YOUR USE OR INABILITY TO USE THE SOFTWARE, OR THE PERFORMANCE OF ANY SERVICES RELATING TO THE SOFTWARE, EVEN IF ACTUATE HAS BEEN ADVISED OF THE POSSIBILITY OF THOSE DAMAGES. IN NO EVENT SHALL ACTUATE'S LIABILITY ARISING OUT OF THIS SLA EXCEED THE AMOUNT PAID BY YOU FOR THE SOFTWARE.

## 5. TERMINATION.

5.01    **Basis for Termination.** Actuate may terminate this SLA if You commit a material breach of this SLA and such breach is not cured within thirty (30) days of receipt of a written notice of such breach.

5.02    **Obligations Upon Termination.** Upon termination of this SLA, You will immediately destroy or return to Actuate all Software and Proprietary Information in Your possession.

5.03    **Effect of Termination.** The following provisions shall survive termination of this SLA: 2, 4, 5.02, 5.03, and 6.

## 6. GENERAL TERMS AND CONDITIONS.

6.01    **Severability.** If any provision of this SLA is found by any court of competent jurisdiction to be invalid, then the remaining provisions shall nevertheless remain in full force and effect.

6.02    **Shipping and Payment Terms.** All shipments of Software will be made F.O.B. Origin. Actuate's latest release of the Software documentation will be made available online at www.actuate.com and printed documentation will be shipped at Actuate's discretion. Upon shipment of Software, Actuate will invoice you for such Software. You will remit payment for invoices within thirty (30) days following receipt thereof. All fees will be nonrefundable except as otherwise expressly provided herein.

6.03    **Taxes.** You shall be responsible for and pay all sales, use, and excise taxes, and like charges imposed by any federal, state, or local governmental entity for Software provided hereunder, excluding only taxes based solely on Actuate's net income. When Actuate has the legal obligation to collect such taxes, the appropriate amount shall be due upon invoice to You unless You provide Actuate with a valid tax exemption certificate authorized by the appropriate taxing authority. You shall hold Actuate harmless from all claims and liability arising from Your failure to pay any such taxes, duties or charges.

6.04    **Choice of Law and Venue.** This SLA shall be governed by and construed under the laws of the State of California without regard to conflicts of laws or provisions thereof, and without regard to the United Nations Convention on Contracts for the International Sale of Goods. You agree that the federal and state courts within San Mateo County, California shall have exclusive jurisdiction to adjudicate any dispute arising out of this SLA.

6.05    **Complete Agreement.** You acknowledge and agree that this SLA is the complete and exclusive statement of the mutual understanding of the parties and that it supersedes and cancels all previous written and oral agreements and communications relating to the subject matter of this SLA. Actuate disclaims all preprinted terms of any purchase order.

6.06 **No Modification.** You agree that this SLA can be modified only by a written agreement duly executed by persons authorized to execute agreements on behalf of the parties hereto. No modification can be accomplished by course of conduct.

6.07 **No Waiver.** You agree that any failure or delay to exercise or any partial exercise of any right, power, or privilege hereunder by Actuate shall not operate as a waiver.

6.08 **Attorneys' Fees.** If any legal action is necessary to enforce the terms of this SLA, the prevailing party shall be entitled to reasonable attorneys' fees and costs in addition to any other relief to which that party may be entitled.

6.09 **Export Laws.** You shall comply with all then current export laws and regulations of the U.S. Government and the government of the country in which You receive delivery of the Software, which pertain to the Software.

6.10 **Audit.** Upon reasonable notice to You, You agree to permit Actuate or its designated Third Party to conduct an audit of Your computer systems to ensure that You are not using more Software than You are licensed to use pursuant to this SLA. If the audit determines that you are out of compliance with this SLA, You shall promptly pay for such Software at the then current price upon receipt of an invoice from Actuate.

6.11 **Publicity.** You agree that Actuate can publicly identify You as an Actuate customer. You agree that Actuate can use, among other things, Your name and descriptions of Your use or intended use of the Software in Actuate press releases, web sites and marketing materials and that Actuate does not need Your prior approval to publish such materials.

## 7. U.S. GOVERNMENT RESTRICTED RIGHTS.

The Software, including related documentation, is provided with Restricted Rights. The use, duplication or disclosure by the U.S. Government is subject to restrictions as set forth in this SLA, and in the applicable provisions of subparagraph (c)(1)(ii) of the Rights in Technical Data and Computer Software clause DFARS 252.227-7013, or subparagraphs (c)(1) and (2) of the Commercial Computer Software - Restricted Rights at 48 CFR 52.227-19. The manufacturer is Actuate Corporation, 701 Gateway Boulevard, South San Francisco, California 94080.

## 8. LIMITED USE LICENSE FOR ACTUATE SOFTWARE.

If You acquired the Software from a Third Party and the Software was embedded or bundled with a Third-Party Software Application, then the Actuate Software contained herein is being licensed to You only for "Limited Use" with the "Third-Party Software Application" with which the Actuate Software was embedded or bundled. Limited Use means that You may use the Actuate Software only in connection with Your contemporaneous use of such Third-Party Software Application and with data solely generated by such Third-Party Software Application. Limited Use does not include use of the Actuate Software in a stand-alone fashion or with software or data not incorporated into or solely generated by the Third-Party Software Application.

By installing, copying, downloading or using the Actuate Software, You agree to be bound by the terms of this Limited Use License.

If You are unsure whether You are restricted to Limited Use of the Actuate Software or You are interested in purchasing a Full Use License for Actuate Software, contact Actuate at 1-800-914-2259 or visit Actuate's web site at www.actuate.com.

040628-2-110401

# EXHIBIT B

# Actuate® Software License and Services Agreement

**NOTE: By ordering, accepting, installing, uploading, downloading or using software product(s) ("Software") or services developed and provided by Actuate Corporation ("Actuate"), you**

- represent that, if you are not installing, uploading, downloading or using the Software in an individual capacity, you are duly authorized to represent the legal entity that orders the Software or for whose benefit you are installing, uploading, downloading or using the Software or services (as an individual or in such representative capacity, the "Corporate End-User");

- represent that the Corporate End-User is the legal entity identified in the applicable quotations, purchase orders, invoices and other documentation related to the acquisition of the Software or services;

- agree that you will personally refrain from violating the terms of this Software License and Services Agreement ("SLA"); and

- conclude a legally binding agreement based on the terms of this SLA between Actuate and the Corporate End-User.

If you do not agree with any of the terms of this SLA, Actuate does not grant any licenses to the Software; use of the Software in the absence of a license constitutes an infringement of Actuate's intellectual property rights. In such event, you may not install, copy, download or use the Software and you must return to Actuate the complete Software package, including the disks and printed materials or, if you downloaded the Software, notify Actuate in writing that you have de-installed the Software, within thirty (30) days of receipt for a refund from Actuate or the company from whom you have received the Software. If you do not comply with these return and notification requirements within thirty (30) days of receipt of the Software, the Corporate End-User will not be entitled to a refund, and it will also not be entitled to use the Software without prior acceptance of this SLA as specified in this preamble.

In the remainder of this SLA, the Corporate End-User is referred to as **"You."**

## 1. END-USER LICENSE.

1.1    **Software License Grant.** Upon Your acceptance of this SLA, and subject to its terms and conditions, Actuate hereby grants to You a limited, non-exclusive, non-sublicenseable and non-transferable license to install one (1) copy of the Software on one (1) computer and upload, execute and use the copy so installed in the working memory of the authorized computer for internal business purposes only. Your license grant is subject to all limitations specified in this Section 1 and conditioned on Your compliance with all such limitations.

1.2    **Software License Parameters in Schedule 1.** The scope of Actuate's license grant to You is further defined and limited by the license parameters described in Schedule 1 hereof. If You have any doubts about the applicable license parameters, You must contact Actuate immediately as specified in Schedule 1. You agree that the burden of proof is on You: If You use the Software beyond the scope of the applicable license grant, You are committing a material breach of this SLA and a violation of Actuate's intellectual property rights.

1.3    **Licenses to Updates and Information.** If Actuate provides any updates or modified versions of Software, such items are subject to all license limitations applicable to the Software to which the updates and modified versions relate. If Actuate provides information or other items without a direct relation to a particular item of Software, e.g., in a training context, You may internally use and copy such items as reasonably necessary for the intended use.

1.4    **CPU Notice and Upgrade Requirements.** Prior to the initial installation of any Software, You shall notify Actuate in writing in accordance with the procedure set forth at http://www.actuate.com/license of the model name and number, location, CPU speed, and CPU type of the server on which any server component of the Software is to be installed. Once installed, You must obtain Actuate's written consent before You move any Software from any CPU to another CPU, which may be subject to a CPU upgrade transfer license fee. Your application for such consent shall be submitted accordance with the procedure set forth at http://www.actuate.com/license and include (i) the name, location, CPU speed and CPU type of the server from which the Software is being moved, (ii) the name, location, CPU speed and CPU type of the server to which the Software is being moved, and (iii) any other information reasonably requested by Actuate. Actuate may withhold Software license key(s) if Actuate cannot



verify that You are using the Software in an authorized manner. If Actuate grants its consent, You may reinstall the Software on the new CPU on the condition that You delete the Software from the previous CPU within five (5) days of successful reinstallation.

1.5 **Territorial Limitation.** You may not install, upload, download, access or use the Software outside of the country to which the Software was initially shipped.

1.6 **Back-Up Copies.** After You have installed a copy of the Software in accordance with this SLA, You may keep the original copy (as downloaded or delivered on a CD) for archival and back-up purposes. If any mandatory, non-waivable laws of any jurisdictions permit You to create one or more back-up copies, You may exercise such rights, but except for such mandatory, non-waivable rights, You agree not to create any additional copies of the Software or accompanying documentation. You shall keep any back-up copy separate from any actively used computer programs or documentation.

1.7 **Other Limitations.** You shall not rent, lease, loan, sell or otherwise distribute the Software. You may not grant access to the Software to any third parties, except that You may enable customers to create content based on Your internal databases in Software that You host on Your premises under Your control. (For example, if You are a financial services provider and You have obtained the necessary licenses, You may enable Your customers to run reports on the status of their accounts with You through a web browser interface, but You may not transfer possession of copies of any Software to Your customers or allow them to run reports on Your customers' own databases.) You may not engage in service bureau activities whereby You execute the Software to create content on databases that service customers supply to You for the purpose of content generation. You shall not modify, adapt, translate, reverse engineer, decompile or otherwise attempt to derive or manipulate the source code of the Software, except as permitted under mandatory, non-waivable laws and only after You have provided thirty (30) days prior written notice to Actuate in accordance with the procedure set forth at http://www.actuate.com/license that You intend to exceed the express license scope of this SLA, in order to give Actuate an opportunity, at Actuate's sole discretion, to provide information to You that alleviates the need for reverse engineering or other activities.

1.8 **Term.** The license granted in this SLA remains effective until terminated in accordance with this SLA, unless You have been notified that a shorter term or a Subscription License applies, in which case, the license continues until the end of the subscription term for which You have paid the applicable subscription license fees.

## 2. OWNERSHIP; CONFIDENTIALITY.

2.1 **All Rights Reserved.** Except as expressly provided otherwise in Section 1 (End-User License), Actuate retains title, ownership and all rights and interests in and to the Software. Actuate does not sell the Software or any copies thereof, but grants only limited licenses as provided herein.

2.2 **Proprietary Information.** You agree that the Software and all computer code (in object and source form), inventions, algorithms, know-how and information embodied in or by the Software and all other business, technical and financial information You obtain from Actuate, whether designated confidential or not ("**Proprietary Information**") constitutes confidential property of Actuate. You also agree that any expression of Actuate's findings, analyses, conclusions, opinions, recommendations, ideas, techniques, know-how, designs, programs, enhancements, software, and other technical information provided to You by Actuate in the course of performing consulting, training, maintenance or other services related to the Software are the Proprietary Information of Actuate.

2.3 **Non-Disclosure.** You agree to keep the Proprietary Information in a secure place, under access and use restrictions designed to prevent disclosure of the Proprietary Information to unauthorized persons and to instruct and effectively obligate Your personnel to keep the Proprietary Information confidential and use it only as expressly permitted by this SLA. The obligations specified in this Section 2.3 shall not apply to any Proprietary Information that (a) is now available or becomes available to the public without breach of this SLA; (b) is lawfully obtained from a third party or parties without a duty of confidentiality; (c) is known to You or independently developed by You without the use of any Proprietary Information or any breach of this SLA, as documented and proven by You; or (d) is required to be disclosed by a valid court order provided that You have first given Actuate reasonable written notice of such requirement and You fully cooperate with Actuate in seeking limitations to, and confidential treatment for, any such disclosure.

2.4 **Breach.** You agree that any use or disclosure of Proprietary Information other than in accordance with the terms of this SLA constitutes a material breach of this SLA, will terminate all licenses granted by this SLA, and entitle Actuate to seek injunctive relief in addition to any other remedies available under this SLA, at law or in equity, because any disclosure in breach of this SLA will cause irreparable injury to Actuate that cannot be compensated solely by monetary damages.

2

3.  **SUPPORT.**

The Support Policy in Schedule 2 applies to support services provided by Actuate for most of its products and may be modified by Actuate from time to time. If You do not agree with modifications to Actuate's Support Terms, Actuate may, at its sole option, (a) offer You to terminate support and, if You terminate, refund to You on a prorated basis any prepaid services fees for the unused portion of the then-current support term, or (b) continue to perform support services under the previous version of the Support Terms. Neither Actuate nor any of its authorized distributors have any obligation to provide support services, unless agreed otherwise in writing for a specified term, which shall not survive any termination of this SLA.

4.  **LIMITATION AND DISCLAIMERS OF WARRANTIES AND LIABILITIES.**

4.1  **Limited Software Media Warranty.** Actuate warrants that the medium on which Actuate delivers the Software will be free from defects in workmanship and materials under normal use for a period of ninety (90) days after delivery of the Software, and that the medium on which Actuate delivers the Software will be repaired or replaced, at Actuate's option, upon return of said defective medium to Actuate within said ninety (90) day period. THIS SHALL BE YOUR SOLE AND EXCLUSIVE REMEDY IN CASES OF DEFECTS OF ANY MEDIA ON WHICH SOFTWARE IS DELIVERED.

4.2  **Limited Software Warranty.** Actuate warrants that for a period of ninety (90) days from the initial delivery of the Software (or during the initial subscription Term, for Subscription Software), the Software, if properly used by You in accordance with the Documentation, shall operate in material conformity with Actuate's user manual documentation for such Software. Actuate does not warrant that the Software will meet all of Your requirements or that the use of the Software will be uninterrupted or error free. ACTUATE'S ENTIRE LIABILITY, AND YOUR EXCLUSIVE REMEDY, UNDER THIS LIMITED SOFTWARE WARRANTY SHALL BE for Actuate (i) to attempt, through reasonable efforts, to correct any reproducible material nonconformity discovered within the 90-day warranty period, or (ii) to replace the nonconforming Software. In the event Actuate is unable to cure the breach of warranty described in this Section 4.2 after attempting the remedies described in (i) and (ii) above, You may return the Software and Actuate shall refund any fees paid by You directly to Actuate for the Software provided that subscription fees will only be returned on a pro-rated basis for the portion of the initial subscription period during which the Software was unusable and after it was returned. The above remedies are available only if Actuate is promptly notified in writing, within the warranty period, upon discovery of the nonconformity by You and if Actuate's examination of the Software confirms that such nonconformity exists and that the Software has not been (i) altered or modified, (ii) subjected to negligence, or computer or electrical malfunction, or (iii) used, adjusted, or installed other than in accordance with the instructions set forth in the Documentation. If You have acquired the Software from a third party, e.g., a distributor or OEM, Actuate will provide the above remedies, except that Actuate cannot refund to You any payments; in this respect, You have to turn to the companies from whom You have acquired the Software, which may or may not be obligated to provide a refund, depending on Your contract with such company.

4.3  **Limited Services Warranty.** Except as set forth at http://www.actuate.com/license, Actuate warrants that it will perform support services in a professional and workmanlike manner. If Actuate substantially fails to meet the standard specified in the preceding sentence, You provide Actuate a detailed written request to cure, and Actuate fails to cure any substantial failure within thirty (30) days of receiving Your detailed written request to cure, You may terminate the support component of this SLA within thirty (30) days of the date on which Actuate received Your request to cure. Upon such termination, Actuate shall refund to You on a pro-rated basis any prepaid services fees for the time after Actuate's receipt of Your detailed written request to cure. THE TERMINATION AND REFUND RIGHT SPECIFIED IN THIS SECTION 4.3 SHALL BE YOUR SOLE AND EXCLUSIVE REMEDY WITH RESPECT TO SUPPORT SERVICES OR ANY UPDATES, INFORMATION OR OTHER ITEMS PROVIDED IN CONNECTION WITH SUPPORT SERVICES.

4.4  **Disclaimer.** EXCEPT AS EXPRESSLY SET FORTH IN SECTIONS 4.1 THROUGH 4.3, ACTUATE MAKES NO WARRANTIES OR REPRESENTATIONS WITH RESPECT TO THE SOFTWARE OR ANY SERVICES AND YOU SHALL NOT HAVE ANY REMEDIES RELATING TO ANY FAILURE OF THE SOFTWARE OR SERVICES TO CONFORM TO SPECIFICATIONS OR THE WARRANTY STANDARDS SPECIFIED IN THIS SECTION 4. ACTUATE DISCLAIMS ANY IMPLIED WARRANTIES AND REPRESENTATIONS, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT.

4.5  **Limitation of Liability.** ACTUATE SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, LOST PROFITS, LOSS OF DATA, OR PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, EVEN IF ACTUATE HAS BEEN ADVISED OF THE POSSIBILITY OF THOSE DAMAGES AND EVEN IF THE LIMITED REMEDIES PROVIDED HEREIN FAIL OF THEIR ESSENTIAL PURPOSE. IN NO EVENT SHALL ACTUATE'S LIABILITY ARISING OUT OF OR IN CONNECTION WITH THIS SLA, THE SOFTWARE OR ANY SERVICES EXCEED THE AMOUNT PAID OR PAYABLE BY YOU. THESE LIMITATIONS

3

SHALL APPLY REGARDLESS OF THE THEORY ON WHICH DAMAGES ARE SOUGHT, INCLUDING, WITHOUT LIMITATION, CONTRACT, STATUTE OR TORT. THEY SHALL NOT APPLY, HOWEVER, IF AND TO THE EXTENT ACTUATE CAUSES DAMAGES INTENTIONALLY OR IF AND TO THE EXTENT DAMAGES CANNOT BE LIMITED UNDER APPLICABLE MANDATORY LAW.

4.6 **Third-Party Software Components.** The Software may contain components made by third parties, which are identified as such in the particular files ("**Third-Party Components**"). Third-Party Components may be open-source products. You agree, for the benefit of Actuate and the third-party developers of or contributors to the Third-Party Components, that with respect to Third-Party Components (a) Your use is entirely at Your own risk and You waive any rights or remedies, (b) THIRD-PARTY COMPONENTS ARE PROVIDED AS IS, WITHOUT WARRANTIES OR CONDITIONS OF ANY KIND, including, but not limited to, any implied warranties of merchantability, fitness for a particular purpose, title or non-infringement, and (c) neither Actuate nor any other person or entity shall have any liability for damages, including direct, indirect, special, incidental and consequential damages, or lost profits. Additional information and applicable license terms related to Third-Party Components, and information how any available source code can be obtained, is contained in the actual files for such Third-Party Components.

## 5. INTELLECTUAL PROPERTY RIGHTS INDEMNITY.

5.1 **Indemnification.** Except as set forth at http://www.actuate.com/license, Actuate shall, at its own expense, defend or, at its option, settle, any claim or action brought against You by a third party, and to indemnify You and Your officers, directors, and employees against all damages and costs, including reasonable legal fees, resulting from such claim or action, or the settlement by Actuate thereof, if and to the extent such claim or action is based on actual infringement of such third-party claimant's patent, copyright, trade secret or trademark by Your use, in accordance with this SLA, of Software or services provided by Actuate. Actuate shall be released from the foregoing obligation unless You provide Actuate with (i) prompt written notice of any such claim or action, or possibility thereof, (ii) sole control and authority over the defense or settlement of such claim or action, and (iii) proper and full information and assistance to settle and/or defend any such claim or action.

5.2 **Right to Substitute.** Without limiting Section 5.1 hereof, if a final injunction is, or Actuate believes in its sole discretion is likely to be, entered prohibiting the use of Software or services by You as contemplated herein, Actuate may, at its sole option and expense, either: (i) procure for You the right to use the infringing Software or services as provided herein, (ii) replace the infringing items with non-infringing, functionally, equivalent products, (iii) suitably modify the infringing items so that they are no longer infringing, or if (i), (ii) or (iii) above is not obtainable on commercially reasonable terms, (iv) accept return of the infringing items and refund (a) for perpetual licenses, the then present value of the license fees paid for such Software, as amortized over a forty-eight (48) month life or (b) for Subscription licenses or services, prepaid fees on a prorated basis for the unused portion of the subscription or support term. Except as specified above, Actuate will not be liable for any costs or expenses incurred without its prior written authorization.

5.3 **Exceptions.** Notwithstanding Sections 5.1 and 5.2 above, Actuate assumes no liability for infringement claims arising from (i) the combination of the Software or work product of any services with other products not provided by Actuate, (ii) any modifications to the Software or services work product unless such modification was made by Actuate, (iii) use of the Software not in accordance with Actuate's user manual documentation, or (iv) Third-Party Components.

5.4 **Limitation.** THIS SECTION 5 STATES THE ENTIRE LIABILITY AND OBLIGATIONS OF ACTUATE, AND YOUR EXCLUSIVE REMEDIES, WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF ANY THIRD-PARTY RIGHTS BY THE SOFTWARE OR ANY SERVICES PROVIDED BY ACTUATE

## 6. TERMINATION.

6.1 **Termination for Cause.** Either party may terminate this SLA if the other party commits a material breach of this SLA and fails to cure such breach within thirty (30) days of receipt of a detailed written request to cure. Neither party may terminate this SLA except as expressly provided herein, but either party may, prior to the end of any subscription or support term, decline a renewal by way of written notice.

6.2 **Obligations Upon Termination.** Upon termination of this SLA, You will immediately destroy or return to Actuate all Software and Proprietary Information in Your possession and, upon Actuate's request, certify compliance with this obligation in a writing duly signed by an authorized representative. Actuate is not obligated to refund any payments, except as expressly provided otherwise in Sections 4 and 5 of this SLA.

6.3 **Effect of Termination.** The following provisions shall survive termination of this SLA: 1, 2, 4.4, 4.5, 5 through 8, and Schedule 1.

4

## 7. GENERAL TERMS AND CONDITIONS.

7.1 **Choice of Law; Arbitration.** This SLA and any dispute arising out of or in connection with this SLA, the Software or any services performed by Actuate ("**Dispute**") will be governed by California law. The Convention on Contracts for the International Sale of Goods shall not apply. If You are based in the United States, You submit to the personal jurisdiction of the courts in San Mateo County, California, USA, and all Disputes shall be exclusively subject to the jurisdiction of such courts. Otherwise, all Disputes shall be resolved by final and binding arbitration before three (3) arbitrators pursuant to the rules and under the auspices of the International Chamber of Commerce, Paris. The arbitrators shall have the authority to determine issues of arbitrability and to award compensatory damages, but they shall not award punitive or exemplary damages. At either party's request, the arbitrators shall issue a written decision explaining the facts and legal reasoning on which their decision is based. The arbitration proceedings shall be conducted in the English language and take place in San Francisco, California, or any other place on which all three arbitrators unanimously agree. As the sole exception to the foregoing agreements on exclusive jurisdiction and arbitration, either party may, at its sole discretion, seek preliminary or permanent injunctive relief in any court of competent jurisdiction. The prevailing party in any Dispute shall be entitled to reasonable attorneys' fees and costs in addition to any other relief to which that party may be entitled.

7.2 **Complete Agreement.** This SLA and any writings issued by Actuate that are expressly incorporated herein (including, without limitation, Actuate's specification of the applicable license parameters and of the legal entity that is entitled to use the Software and services), represent the entire agreement and understanding between the parties and supersede any prior or contemporaneous agreements and understandings regarding the subject matter hereof. Actuate does not accept, and Actuate hereby expressly rejects, any additional terms that You may present on purchase orders or otherwise. If You have entered into a written agreement regarding any particular item of Software or services with Actuate that both parties signed in handwriting, then such written agreement shall supersede this SLA with respect to such Software item or services.

7.3 **No Modification or Waivers.** This SLA cannot be modified, except with Actuate's express written agreement, which Actuate may grant via e-mail or electronic means (e.g., in connection with an online support renewal subject to new or modified support terms). No modification can be accomplished by course of conduct. Any failure or delay to exercise or any partial exercise of any right, power, or privilege hereunder by Actuate shall not operate as a waiver.

7.4 **No Assignment.** You cannot assign this SLA or any rights or obligation thereunder. Any (purported) assignment shall be null and void. Actuate can assign or delegate performance under this SLA and any rights or obligations thereunder to any affiliated company.

7.5 **Severability.** If and to the extent that any provision of this SLA is invalid or unenforceable under applicable law, then such provisions shall be interpreted in a manner that comes as close as possible to its original intent, and the remaining provisions shall nevertheless remain in full force and effect.

7.6 **Compliance.** You shall comply with all then current laws and regulations of the U.S. Government and the government of the country in which You receive delivery of the Software, including, without limitation, export control laws, and You shall indemnify Actuate from any costs and losses arising from or related to Your non-compliance.

7.7 **Audit.** Upon reasonable notice, You shall permit Actuate or a designated third party to audit Your computer systems to ensure that You are using all Software and services in accordance with this SLA. If You are out of compliance, You shall, in addition to any other rights and remedies Actuate may have, promptly pay for the costs of the audit and for the licenses that are required for Your actual use based on the higher of Actuate's list prices in effect (a) when You originally acquired the Software, or (b) at the time Your non-compliance is discovered.

7.8 **Publicity.** You agree that Actuate can publicly identify You as an Actuate customer. You agree that Actuate can use, among other things, Your name and descriptions of Your use or intended use of the Software in Actuate press releases, web sites and marketing materials and that Actuate does not need Your prior approval to publish such materials.

7.9 **U.S. Government Rights.** The Software, including related documentation, is provided with Restricted Rights. The use, duplication or disclosure by the U.S. Government is subject to restrictions as set forth in this SLA, and in the applicable provisions of subparagraph (c)(1)(ii) of the Rights in Technical Data and Computer Software clause DFARS 252.227-7013, or subparagraphs (c)(1) and (2) of the Commercial Computer Software - Restricted Rights at 48 CFR 52.227-19. The manufacturer is Actuate Corporation, 701 Gateway Boulevard, South San Francisco, California 94080.

5

7.10   **Written Form.** Any notices or other communications under or in connection with this SLA shall be ineffective, unless the following form requirements are observed: (a) Actuate may provide notices in any electronic or physical format to You; (b) You may provide notices to Actuate in accordance with the procedure set forth at http://www.actuate.com/license .

7.11   **Governing Language.** The English version of this SLA is legally binding and shall prevail in case of any inconsistencies with any translated versions that may be provided for convenience.

## 8.  SPECIAL TERMS FOR DIRECT CUSTOMERS ONLY.

If You acquire Software or services from parties other than Actuate, this Section 8 does not apply to You. If You acquire Software or services directly from Actuate, then this Section 8 does apply to You.

8.1   **Shipping and Payment Terms.** All shipments of Software will be made (a) electronically or (b) physically FOB point of shipment for shipments to destinations in the United States or FCA point of shipment for shipments to all other destinations. Upon shipment of Software, Actuate will invoice You for such Software. You will remit payment for invoices within thirty (30) days following receipt thereof. All fees will be nonrefundable except as otherwise expressly provided herein. Late charges in the amount of one and one half percent (1.5%), or in the maximum amount permitted by applicable law, whichever is less, apply to any amounts that are overdue. You shall reimburse Actuate for all collection costs, including, but not limited to reasonable attorneys fees.

8.2   **Taxes.** You shall be responsible for and pay all customs duties, sales, use, and excise taxes, VAT, and any like charges imposed by any federal, state, or local government for any Software or services provided hereunder, excluding only U.S. taxes based solely on Actuate's net income. When Actuate has the legal obligation to collect such taxes, the appropriate amount shall be due upon invoice to You unless You provide Actuate with a valid tax exemption certificate authorized by the appropriate taxing authority. You shall hold Actuate harmless from all claims and liability arising from Your failure to pay any such taxes, duties or charges.

6

Schedule 1 to Actuate SLA

# SOFTWARE LICENSE PARAMETERS

### 1. LIMITED USE LICENSE.

If You acquire the Software from a third party and the Software is embedded or bundled with a third-party software application, then You may only use the Software in combination and contemporaneously with the third-party software application with which the Software is embedded or bundled and on the same authorized computer and solely with data generated by such third-party software application. You may not use the Software in a stand-alone fashion, on a different computer, or with software or data not incorporated into or generated by the third-party software application.

### 2. BASIC LICENSE.

As a default, You receive only a Basic License as defined in this Section 2 of this Schedule 1, unless Section 1 of this Schedule 1 applies to You or either Actuate, or a distributor with Actuate's authority, has expressly notified You in writing (e.g., in an order acknowledgement, invoice, or license key documentation) that one or more of the parameters defined in Sections 3 through 6 of this Schedule 1 apply to Software acquired by You. Under a Basic License, You may only install one (1) copy of the Software on one computer, which may not (a) be connected to a network in a manner that allows users of other computers to access the Software, or (b) have a performance capacity greater than a single core (if applicable) of a single processor on a single machine, Pentium I by Intel or equivalent.

### 3. CPU LICENSE.

For purposes of this license, CPU is defined as a single core (if applicable) of a single processor on a single machine. If Actuate, or a distributor with Actuate's authority, notifies You in writing that You receive a **"CPU License"** to a particular item of Software, or if any such writing indicates a maximum number of copies or CPUs, then the following license terms and conditions apply to You in addition to all other terms of the SLA:

You shall configure the Software so that such Software can only access the number of CPUs that are licensed. The licensed number of CPUs is one (1), unless Actuate, or a distributor with Actuate's authority, specifies a greater number in writing. Every CPU on the reporting server environment, including, but not limited to, remote clustered nodes that are configured to run Actuate server products must be covered by separate licenses as licensed CPUs.

### 4. NAMED USER LICENSE.

If Actuate, or a distributor with Actuate's authority, notifies You in writing that You receive a **"Named User License"** to a particular item of Software, or if any such writing indicates a maximum number of users, then the following license terms and conditions apply to You in addition to all other terms of the SLA:

    4.1    **Named User Defined.** A **"Named User"** is an individual person who uses the Software to generate or view content created from data in Your internal databases. You may not allocate Named User Licenses to functions or shared positions. If You have allocated a Named User License to a particular employee or independent contractor who then leaves Your organization or moves to a position in which such individual will no longer use the Software, You may reallocate the Named User License to another Named User provided that the previously allocated Named User has no longer access to the Software and You do not reallocate Named User Licenses more than once every calendar quarter. You must document all allocations of Named User Licenses to individual Named Users and make such documentation available to Actuate on request. If You fail to comply with these allocation rules, You shall be considered to be in material breach of this SLA and to have allocated one Named User License to every employee and independent contractor in Your organization and You shall pay to Actuate the resulting license fees in addition to any other rights and remedies Actuate may have under such circumstances.

    4.2    **Access by Named Users.** You may not grant access to the Software to any individual, unless You have allocated a lawfully obtained Named User License to such individual and documented such allocation in accordance with Section 4.1 of this Schedule 1. Access means the ability to execute or manipulate the execution of any Software, e.g., without limitation, in the process of viewing or transferring reports or other content generated by the Actuate iServer or residing in the working memory of the Software.

7

4.3 **Maximum Number of Named Users.** The maximum number of Named Users shall be one (1), unless Actuate, or a distributor with Actuate's authority, have agreed in writing to a greater number. Named User Licenses are available in block increments. Named User Licenses are allocated on a *per CPU, per Named User, per iServer System basis.* (An iServer System is a stand-alone or clustered iServer.) Thus, each individual Named User must be allocated a separate Named User License for each iServer being accessed or from which any content is received. If You are using Actuate Multi-Application Option or Online Archive Option, a separate Named User License is required for each additional Encyclopedia Volume (*i.e.*, application) that an individual person accesses or receives content from within an iServer System.

## 5. NAMED DEVELOPER LICENSE.

If Actuate, or a distributor with Actuate's authority, notifies You in writing that You receive a **"Named Developer License"** to a particular item of Software, or if any such writing indicates a maximum number of developers, then the following license terms and conditions apply to You in addition to all other terms of the SLA:

You have to allocate each Named Developer License to one individual (see requirements for Named Users) and one CPU (see requirements for CPU Licenses). Thus, each license may be accessed or used only for content development purposes by a single, identified developer. Such developer may use an individual iServer for development or access a common development iServer; provided, however, that each individual developer accessing an iServer must have a separate Named Developer License.

A non-"Named" Developer License is subject to the terms of the Basic License except that it may only be used for internal development purposes and not production purposes.

## 6. SUBSCRIPTION LICENSE.

If Actuate, or a distributor with Actuate's authority, notifies You in writing that You receive a **"Subscription License"** to a particular item of Software, or if any such writing indicates a limited license term, then the following license terms and conditions apply to You in addition to all other terms of the SLA and one or more of the parameters described in this Schedule 1:

Subscription Licenses are Basic Licenses, CPU Licenses, Named User Licenses, or Developer Licenses, which expire at the end of the subscription term. The subscription term shall be twelve (12) months, unless Actuate or a distributor with Actuate's authority, has specified a different term.

### E-mail or call us if you have any questions:

If You are unsure about the license parameters that apply to You, or if You are interested in upgrading to another available license model, contact Actuate in accordance with the procedure set forth at http://www.actuate.com/license .

8

Schedule 2 to Actuate SLA

# SUPPORT POLICY

This policy is effective May 6, 2005 and may be changed by Actuate from time to time.

This policy does not apply to the products indicated at http://www.actuate.com/license; support policies for such products are set forth at such location and may be changed by Actuate from time to time.

During the support term, Actuate provides the following services and information with Actuate's then-current Actuate's Supported Product and Obsolescence Policy, which is available on request.

**Telephone Support.** Actuate provides telephonic support for the Software from 6 a.m. to 6 p.m. Pacific Time, Monday through Friday (Actuate company holidays excluded).

**Updates.** Actuate delivers all new releases, corrections, enhancements and updates to the Software that Actuate makes, at its sole discretion, generally available to all support customers.

**Customer Support Objectives.** Actuate recognizes that to maintain a competitive advantage, it is in its best interest to fix serious problems with the Software and to promptly respond to problems support customers bring to Actuate's attention. Actuate will use reasonable commercial efforts to respond, based on the severity of the problem and in accordance with its Service Level Objectives set forth below, to Your requests for assistance in fixing problems with the Software.

The following table summarizes Actuate's Service Level Objectives.

| Service Levels | Acknowledgment | Response | Status Frequency | Temporary Fix |
|---|---|---|---|---|
| Priority 1 | 15 Minutes | 30 Minutes | Every Day | 1 Day |
| Priority 2 Deployment | 15 Minutes | 1 Hour | Every Day | 2 Days |
| Priority 2 Feature Failure | 3 Hours | 6 Hours | Every 3 Days | 8 Days |
| Priority 3 | 4 Hours | 8 Hours | Every 5 Days | 10 Days |
| Priority 4 | 4 Hours | 8 Hours | Every 7 Days | 12 Days, if applicable |

Note: All Priority 1 and Deployment Stoppage Priority 2 requests must be logged via a phone call to the designated support center for the Service Level Objectives to be obtainable.

Both hours and days listed in the table above are Actuate's Customer Support hours:
Monday through Friday, 6:00 AM - 6:00 PM PST (Holidays Excluded)

## Customer Support Definitions

### Priority 1: Down Production System

The Actuate system is failing in a production environment resulting in a significant or complete loss of productive capability. This type of problem severely impacts the customer's business objectives and requires rapid response and

9

resolution. Examples of a down production environment are a non-recoverable server crash or the complete failure of one of the Actuate system components.

### Priority 2: Deployment Stoppage

The Actuate system is failing in a pre-deployment environment, which results in a significant delay in the deployment of the customer's system into production. This type of problem severely impacts the schedule of the rollout of the customer's production system. Typically, the problem will have to occur in a period where all implementations have been completed and the customer is in the process of testing the production environment or the staging environment just prior to going into production.

In addition, if customer has any problem during the first installation of an Actuate product, the problem will fall into this priority. Installation problems, typically, encompass situations where install scripts or programs failed to run or the product failed to start after the installation process completed.

### Priority 2: Major Feature Failure

One of the major functions or features of the Actuate system is failing. This type of problem also requires rapid response and resolution. Examples of a major feature failure are the failure of reports to run or the return of incorrect results by an Actuate API function.

### Priority 3: Feature is not working as documented

A feature in the Actuate software is not behaving as documented by Actuate. Productive work can continue, but the Actuate software is not performing to specification and a remedy is required.

### Priority 4: General questions

These problems are of a general nature and pertain to how the Actuate software should operate in a production or development environment. This category also includes feature requests for subsequent releases.

### Acknowledgment

Acknowledgment is defined as contact by either e-mail or phone by a trained Customer Support professional to advise of the receipt of a customer support issue

### Initial Response

Initial response is defined as contact by either e-mail or phone by a trained Customer Support professional to gather additional information about a customer support issue and to determine the steps to reproduce the problem.

### Status Frequency

This is the frequency with which Actuate Customer Support will update our customers on their open support issues. This frequency may be extended by mutual agreement between the customer and Actuate Customer Support.

### Temporary Fix

This is a relief from the experienced behavior. It may take the form of a workaround, a patch or an alternate design approach.

050531-2-110401